**Frank R. CASALE, Appellee,**

v.

**DOONER LABORATORIES, INC.,
Appellant.**

**No. 72–2180.**

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1973.

Decided July 13, 1973.

Donald E. Sharpe, Baltimore, Md., (Browne L. Kooken and Piper & Marbury, Baltimore Md., on brief), for appellant.

Arthur Dale Leach, Hyattsville, Md., for appellee.

Before BOREMAN, Senior Circuit Judge, CRAVEN and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal from a judgment on a jury verdict in federal district court awarding Frank Casale damages against Dooner Laboratories, Inc., for fraudulent misrepresentation and libel. Jurisdiction rests on diversity of citizenship, and the law of Maryland applies.[1] We affirm that part of the judgment below based upon fraud, but we reverse the libel count because we conclude the district court should have granted Dooner's motion for a directed verdict.

In November 1967 Casale and Eugene Dooner, president of Dooner Laboratories, held several meetings concerning the possible employment of Casale as a drug representative and salesman for the defendant company. At that time, Casale was employed in a similar capacity by the William S. Merrell Company, and had been for over 14 years. Following these discussions, Casale quit his job with Merrell and accepted employment with Dooner in January 1968. Casale

---

1. Atwell v. Retail Credit Co., 431 F.2d 1008 (4th Cir. 1970).

continued to act as Dooner's sales representative, primarily covering drugstores in the Washington, D. C., area, until he was fired in July 1968 for allegedly ineffective salesmanship.

Casale filed suit against Dooner in the Circuit Court for Prince George's County, Maryland, alleging in count one of the complaint that he had quit his job with Merrell in reliance upon Dooner's fraudulent misrepresentations concerning Dooner's favorable situation in the industry and the salary and benefits of his new employment. Count two alleged that he was unable to obtain new employment after being fired by Dooner because he had been "blackballed" within the pharmaceutical industry as a result of libelous material[2] contained in the following letter written by Dooner to various pharmacies in the Washington area.

September 25, 1968

Dear Mr. Pharmacist:

Dooner Laboratories has been the victim of rather vindictive tactics by a certain party in the Washington, D. C. area.

The approach to the pharmacist has many variations but the intent is to establish in your mind that this firm is going to discontinue its operation.

Our firm is very much in business and growing. Our local sales director is:

Mr. James E. Lucas
9453 Arlington Boulevard
Fairfax, Virginia 22030
Tel. No. 591–3141

Jim is constantly available to answer any questions regarding this firm and to offer any and all services relative to the ethical promotion of Dooner pharmaceuticals.

I would appreciate it if you would exercise extreme caution relative to rumors about this firm.

Being the astute business person that you are, I think you fully realize the harm that can result from such malicious intent.

Your assistance in curbing these rumors is deeply appreciated.

Yours very truly,
Dooner Laboratories, Inc.

Gene Dooner,
President

The action was subsequently removed to the United States District Court for the District of Maryland, 343 F.Supp. 917. At the trial, as to count one Dooner denied making false representations to induce Casale to change employment, and as to count two raised the defense of qualified privilege.

With respect to the latter, Dooner presented evidence that was largely uncontradicted. In September 1968 James Lucas, the new salesman replacing Casale in the Washington area, advised Dooner that he had encountered numerous rumors among local pharmacists to the effect that Dooner was ceasing operation. Lucas also informed Dooner that some pharmacists were planning to return the merchandise they had previously purchased from Dooner's company. Lucas and Eugene Dooner discussed the possibility of writing a letter to the pharmacies in the area assuring them that the company was still operating, but Lucas thought a letter was unnecessary at that time because he felt he could counteract the rumors himself. Despite his efforts, the rumors continued to spread and some pharmacists began returning Dooner's merchandise. On October 1, 1968, Lucas wrote to Dooner recommending that the previously suggested letter to the pharmacies be sent.[3] Dooner wrote the allegedly libelous letter to various pharmacies in an effort to protect his business by quieting the rumors.

---

2. "Vindictive tactics by a certain party" in paragraph one of the letter, and "malicious intent" in paragraph six constitute the alleged libel.

3. Although the allegedly libelous letter is dated September 25, 1968, Dooner testified that he did not write it until early October after having received the recommendation from Lucas.

In an effort to rebut Dooner's defense of privilege, Casale attempted at trial to show that Dooner had abused the occasion by using unnecessarily abusive language in the letter and by mailing it to more persons than were reasonably necessary to accomplish its purpose.

At the close of all of the evidence, the trial judge denied Dooner's motion for a directed verdict and submitted *inter alia* the following issues to the jury:

(6) Did the defendant in sending the letter have a business interest to protect which would give the letter the protection of a qualified privilege?
Answer Yes or No: ___

If your answer to Question No. 6 is "No", then proceed to answer Question No. 8. If your answer to Question No. 6 is "yes", then proceed to answer No. 7.

(7) Do you find that the letter of September 25, 1968 sent by Eugene Dooner contained statements which were made in reckless disregard of the truth, or that in the letter Eugene Dooner used unnecessarily abusive language, or that the letter was motivated by ill will toward the plaintiff Frank R. Casale?

Answer Yes or No: ___

The jury answered issue number six in the negative, failed to answer issue number seven, as instructed, and proceeded to issue number eight, which related to the amount of compensatory damages. The jury returned a verdict for Casale and awarded him $8,000 in compensatory damages and $60,000 in punitive damages on the libel count, and $744 in compensatory damages and $20,000 in punitive damages on the fraud count. In response to the district court's intimation that the punitive damages were excessive, Casale filed a remittitur and accepted an award of $10,000 in punitive damages on count one and $30,000 in punitive damages on count two. Dooner appealed.

Under the law of Maryland, the elements of actionable fraud are these: (1) a false representation, (2) knowledge of its falsity or such reckless indifference to truth so as to impute knowledge, (3) that the false representation was made for the purpose of defrauding another, (4) that the other person relied upon the misrepresentation, had the right to rely upon it, believed it to be true, and embarked upon a course of conduct he would not have chosen but for the misrepresentation, and (5) damage directly resulting from the false representation. James v. Goldberg, 256 Md. 520, 261 A.2d 753, 758 (1970); Appel v. Hupfield, 198 Md. 374, 84 A.2d 94, 95–96 (1951).

Dooner's only point of assigned error with respect to the fraud count is its contention that the district court erred in submitting the issue of fraud to the jury. The evidence as to fraudulent representation to induce Casale to give up his job with Merrell was sharply conflicting. It is enough to say that the jury could have believed, and apparently did, that Casale was promised a larger salary than he received, other employment benefits that were not forthcoming, and that the nature, extent, and degree of establishment of the Dooner business was falsely represented to lure him from his former employment. We think that it was not error to submit the fraud count to the jury, and that the judgment entered upon count one, after remittitur, should be affirmed.

It is otherwise as to the libel count, and for reasons to be stated we hold that the judgment entered upon it must be reversed.

We think the district judge erred in submitting to the jury determination of whether the alleged libel was made upon a privileged occasion. Under Maryland law, where the facts are not in substantial dispute, as here, privilege is initially a question of law to be decided by the court. Moreover, we conclude that Casale did not present sufficient evidence of malice to rebut and

send to the jury the issue of qualified privilege, and that the district court, therefore, should have granted Dooner's timely motion for a directed verdict.[4]

■ Maryland decisions accord with those of most jurisdictions in emphasizing the active role of the trial judge in libel actions.[5] Initially, it is for the court to determine the defamatory nature of the writing, to decide "whether the words charged in the declaration amount in law to libel. . . ." Brinsfield v. Howeth, 107 Md. 278, 284, 68 A. 566, 567 (1908). Heath v. Hughes, 233 Md. 458, 197 A.2d 104, 106 (1964); Walker v. D'Alesandro, 212 Md. 163, 129 A.2d 148, 157 (1957); see W. Prosser, Law of Torts 765 (3d ed. 1964). It is also traditionally within the province of the court to determine whether the words, assuming they are libelous, were written on a privileged occasion, and whether any existing privilege is qualified or absolute. Peurifoy v. Congressional Motors, Inc., 254 Md. 501, 255 A.2d 332, 338 (1969); Stevenson v. Baltimore Baseball Club, Inc., 250 Md. 482, 243 A.2d 533, 538 (1968); Brinsfield, supra, 107 Md. at 287, 68 A. 566 (1908); Fresh v. Cutter, 73 Md. 87, 92, 93, 20 A. 774 (1890); see Prosser, supra, at 823.

The defense of qualified privilege has been defined as follows:

[T]he law considers such [libelous] publication as malicious, unless it is fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned. In such cases, the occasion prevents the inference of malice, which the law draws from unauthorized communica-

tions, and affords a qualified defence depending upon the absence of actual malice. If *fairly* warranted by any reasonable occasion or exigency, and honestly made, such communications are protected for the common convenience and welfare of society; and the law has not restricted the right to make them within any narrow limits. [Original emphasis].

Peurifoy v. Congressional Motors, Inc., 254 Md. 501, 255 A.2d 332, 338 (1969)(quoting from Toogood v. Spyring, 1 C.M. & R. 181, 193, 149 Eng.Rep. 1044 [1834]). *See Stevenson, supra,* 250 Md. 482, 243 A.2d at 337–338; *Fresh, supra,* 73 Md. at 92, 20 A. 774. The Restatement puts it more succinctly:

Factors Which Determine the Existence of a Conditionally Privileged Occasion

*Protection of the Publisher's Interest*

An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that

(a) facts exist which affect a sufficiently important interest of the publisher, and

(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.

Restatement of Torts § 594 (1938).

The trial judge here submitted the legal question involving the defense of qualified privilege to the jury in the form of issue number six. This, we hold, was error under Maryland decisions. We think reasonable men could not differ as to whether Dooner had a legitimate business interest to protect. The evidence was uncontradicted that

---

4. Because we believe that the alleged libel enjoyed a qualified privilege, we find it unnecessary to determine whether the letter of September 25, 1968, was actually libelous under Maryland law. Orrison v. Vance, 262 Md. 285, 277 A.2d 573, 576 (1971). We also need not delve into the somewhat cloudy Maryland distinction between libel "per se" and "per quod." See Murnaghan, From Fig-

ment to Fiction to Philosophy—The Requirement of Proof of Damages in Libel Actions, 22 Cath.U.L.Rev. 1 (1972).

5. *See* 1 F. Harper and F. James, The Law of Torts § 5.24 (1956); W. Prosser, Law of Torts 765 (3d ed. 1964); Murnaghan, *supra* note 4.

false rumors were circulating, that they had detrimentally affected Dooner's business, that merchandise was being returned, that sales resistence was increasing, that Lucas had not succeeded in his efforts to correct the rumors, and that Eugene Dooner believed that the letter was necessary to protect the business. We conclude, therefore, that

> all of the evidence . . . tends to show only that the statements made and the letters and memoranda written were part of the normal and ordinary duties which [the defendant] owed, as general manager, to his corporation and its board of directors. They were, therefore, privileged communications
> . . . .

Domchick v. Greenbelt Consumer Services, Inc., 200 Md. 36, 87 A.2d 831, 834 (1952).

Once the court determines that the occasion is one of qualified privilege, the burden is on the plaintiff to rebut the defense. *Peurifoy, supra,* 254 Md. 501, 255 A.2d at 338; *Domchick, supra,* 200 Md. 36, 87 A.2d at 834; 1 F. Harper & F. James, The Law of Torts 437 (1956); W. Prosser, *supra,* at 823. The privilege may be defeated by evidence that the defendant abused the privilege by not exercising it in a reasonable manner and for a proper purpose, or that there was "actual malice." *Peurifoy, supra,* 254 Md. 501, 255 A.2d at 338; *Stevenson, supra,* 250 Md. 482, 243 A.2d at 536. *Domchick, supra,* 200 Md. 36, 87 A.2d at 834–835; W. Prosser, *supra,* at 823. While the issue of the existence of a qualified privilege is one of law to be decided by the court, the plaintiff has the right to go to the jury on the issue of malice and abuse once he has presented evidence deemed by the court to be legally sufficient. *Peurifoy, supra,* 254 Md. 501, 255 A.2d

at 338; *Stevenson, supra,* 250 Md. 482, 243 A.2d at 536; *Brinsfield, supra,* 107 Md. at 288, 68 A. 566. F. Harper & F. James, *supra,* at 437; W. Prosser, *supra,* at 823. If the occasion is found to be privileged, and if there is not sufficient evidence of abuse or malice to require submission of the issue to the jury, the trial court must direct a verdict in favor of the defendant.[6]

The Court of Appeals of Maryland has recently exposited the proper application of these state law standards:

> We have said that, in this context malice means "a reckless disregard of truth, the use of unnecessarily abusive language, or other circumstances which would support a conclusion that the defendant acted in an ill-tempered manner or was motivated by ill-will." In determining an abuse of privilege all relevant circumstances are admissible, including the defendant's reasonable belief in the truth of his statements, the excessive nature of the language used, whether the disclosures were unsolicited, and whether the communication was made in a proper manner and only to proper parties. [Citations omitted].

Orrison v. Vance, 262 Md. 285, 277 A.2d 573, 578 (1971).

Here, Casale presented opinion evidence, in order to show abuse or actual malice, that several pharmacists who had recieved the letter considered the language to be extremely harsh. He also attempted to show that, because several persons in Maryland had allegedly received copies of the letter, Dooner had mailed the letter to more persons than necessary for the protection of the business interest.

We believe this evidence,[7] as a matter of law, is insufficient to take the issue

---

6. Harnish v. Herald-Mail Co., 264 Md. 326, 286 A.2d 146 (1972); Orrison v. Vance, 262 Md. 285, 277 A.2d 573 (1971); Peurifoy v. Congressional Motors, Inc., 254 Md. 501, 255 A.2d 332 (1969); Stevenson v. Baltimore Baseball Club, Inc., 250 Md. 482, 243 A.2d 533 (1968); Heath v. Hughes, 233 Md. 458, 197 A.2d 104 (1964).

7. The only other evidence offered to show malice was the colloquy between Eugene Dooner and Casale at the time Casale was fired. Such conversations are usually unpleasant. Language attributed to Eugene Dooner, albeit excitable and intemperate, does not, we think, indicate malice in disseminating the letter.

of malice or abuse to the jury.[8] To characterize the spreading of false rumors that a business is discontinuing its operation as "vindictive" and "malicious" seems to us fair comment. Indeed, it is difficult to conceive of an innocent motivation on the part of one knowingly spreading such false rumors. A simple reading of the letter *in its entirety* effectively refutes defendant's argument that the letter was "unnecessarily abusive" and "excessive." *See Heath, supra,* 233 Md. 458, 197 A.2d at 107.

As for the contention that the letter was mailed to more persons than necessary to protect Dooner's business interests, we believe that argument is also without merit. That the letter may have been sent to some pharmacists who had not been Casale's customers, in Maryland or elsewhere, and that seems doubtful,[9] falls short of establishing unnecessarily broad dissemination. Pharmacists, like other business persons, presumably have some business contact with one another, and once a rumor starts, it can be spread quite innocently by those who hear it from the originator. Moreover, there is no evidence that the letter was disseminated far beyond Casale's general sales territory.

Casale presented no evidence that the letter exhibited "a reckless disregard of truth," or that the "communication was made in a[n] [im]proper manner." As was true in A. S. Abell Co. v. Barnes, 258 Md. 56, 265 A.2d 207, 220 (1970), where the Court of Appeals of Maryland held that actual malice was not established in a libel action, we think that

> The evidence here showed the [the defendant] did not simply fabricate the story, or that it was the product of [the defendant's] imagination, or that it was based wholly on unverified information anonymously received or

that the statements were so inherently improbable that only a reckless man would have put them in circulation. Nor was the evidence sufficient to establish that there were obvious reasons to doubt the veracity of the reporter or the accuracy of his reports.

We have considered the defendant's point of error with respect to allegedly improper jury argument by Casale's counsel, and conclude that reversible error does not appear.

The judgment of the district court will be affirmed as to count one, and reversed as to count two.

Affirmed in part.

Reversed in part.

---

8. We have previously noted that the question of actual malice, although presented to the jury, was not answered. P. 306, *supra.*

9. Eugene Dooner, Lucas, and Dooner's secretary all testified that only 25–30 copies of the letter were made, and that these were mailed to the company's customers in the Washington, D. C., "area."