**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 17-1972**

———————

WICOMICO NURSING HOME, as assignee and/or authorized Representative of Margaret Smith, Peggy Outten, Ruby Bounds, Shirley Hackett, Carol Synder, and William Soil; OAKVIEW SNF, LLC, d/b/a Oakview Rehabilitation and Nursing Center, as assignee and/or authorized Representative of Cheryl Hart; ANCHORAGE NURSING, LLC, d/b/a Anchorage Nursing and Rehabilitation Center, as assignee and/or authorized representative of Benjamin Winder and Frances Johnson; BROOKE GROVE FOUNDATION, INC., as assignee and/or authorized representative of Eloise Roberson and Mary Imhoff,

Plaintiffs – Appellants,

v.

LOURDES R. PADILLA; DENNIS R. SCHRADER,

Defendants – Appellees.

———————

**No. 17-2033**

———————

WICOMICO NURSING HOME, as assignee and/or authorized Representative of Margaret Smith, Peggy Outten, Ruby Bounds, Shirley Hackett, Carol Synder, and William Soil; OAKVIEW SNF, LLC, d/b/a Oakview Rehabilitation and Nursing Center, as assignee and/or authorized Representative of Cheryl Hart; ANCHORAGE NURSING, LLC, d/b/a Anchorage Nursing and Rehabilitation Center, as assignee and/or authorized representative of Benjamin Winder and Frances Johnson; BROOKE GROVE FOUNDATION, INC., as assignee and/or authorized representative of Eloise Roberson and Mary Imhoff,

Plaintiffs – Appellants,

v.

LOURDES R. PADILLA; DENNIS R. SCHRADER,

Defendants – Appellees.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:16-cv-01078-RDB)

_____

Argued: September 27, 2018                    Decided: December 6, 2018

_____

Before AGEE and FLOYD, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Floyd and Judge Gibney joined.

_____

**ARGUED:** Kimberly Mahlow Watt, SB2, INC., Harrisburg, Pennsylvania, for Appellants. David Stephen Lapp, Michael Lee Bouyea, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** Kathleen C. Morris, Katie Z. Van Lake, SB2, INC., Harrisburg, Pennsylvania, for Appellants. Brian E. Frosh, Attorney General, Hilma J. Munson, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

_____

AGEE, Circuit Judge:

Wicomico Nursing Home, Oakview SNF, LLC, Anchorage Nursing, LLC, and Brooke Grove Foundation, Inc. (the "Nursing Homes"), on behalf of eleven residents, sued Lourdes Padilla, the Secretary of the Maryland Department of Human Services, and Dennis Schrader, the Secretary of the Maryland Department of Health (the "Secretaries"). The Nursing Homes allege that the Secretaries wrongfully denied the residents Medicaid benefits in violation of the Fourteenth Amendment and several federal statutes. The district court dismissed the Nursing Homes' Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. The Nursing Homes moved to alter or amend the judgment, which the district court denied. The Nursing Homes now appeal both orders. For the reasons set forth below, we affirm the district court's determinations.

I.

"Medicaid is a cooperative program through which the federal government offers financial assistance to states, allowing them to provide medical services to individuals with limited incomes." *Pashby v. Delia*, 709 F.3d 307, 313–34 (4th Cir. 2013). Maryland participates in Medicaid, and, as a participant in Medicaid, the state "must comply with federally mandated standards." *Id.*

The Nursing Homes alleged the Secretaries' handling of the Medicaid program did not comply with state and federal law. For example, the Nursing Homes alleged in their Complaint that the Secretaries did not seek to obtain Medicaid applicants' financial

information electronically, as required by federal regulation, but placed the burden of showing need on applicants. They also alleged the Secretaries did not comply with either federal or state laws requiring them to inform an applicant that his application had been denied. Instead, the Complaint alleges, the Secretaries denied Medicaid applications but told applicants that the applications were "being reconsidered and/or reactivated." J.A. 19 ¶ 43 (internal quotation marks omitted). The Nursing Homes go on to allege that the reactivation procedure was confusing and applied in an arbitrary manner.

Based on these alleged deficiencies, the Nursing Homes, "as assignee and/or authorized representative of" one or more of eleven of their current or former residents (collectively, the "Residents"),[1] initiated a lawsuit against the Secretaries in the District of Maryland. J.A. 9. According to the Complaint, the Residents had been denied Medicaid coverage in the past, had received services from one of the Nursing Homes after being denied Medicaid coverage, and carried "a substantial outstanding balance" with their respective Nursing Homes. J.A. 11–14 ¶¶ 5–15.

Alleging various causes of action under the Fourteenth Amendment, the Medicaid Act, Title II of the Americans with Disabilities Act (the "ADA"), and Section 504 of the Rehabilitation Act, the Nursing Homes asked for declaratory relief and an injunction

---

[1] The eleven Residents represented by the Nursing Homes are Cheryl Hart, Margaret Smith, Peggy Outten, Ruby Bounds, Shirley Hackett, Carol Snyder, William Soil, Benjamin Winder, Frances Johnson, Eloise Roberson, and Mary Imhoff. The Complaint alleges that Hart, Outten, Hackett, Snyder, Soil, and Winder currently reside at one of the Nursing Homes (the "Living Residents"). It further claims that Smith, Bounds, Johnson, Roberson, and Imhoff, who are now deceased, were residents at one of the Nursing Homes before their death (the "Deceased Residents").

4

"requiring the [Secretaries] to automatically approve the [Residents'] Medicaid benefits" J.A. 34 ¶ 131, to apply retroactively to the day each Resident became eligible for Medicaid benefits. The Nursing Homes also sought compensatory and emotional distress damages.

The district court dismissed the Complaint for lack of subject matter jurisdiction on two grounds. First, it concluded the Eleventh Amendment barred the Nursing Homes' Fourteenth Amendment and Medicaid Act claims. The court noted that the Eleventh Amendment allows only prospective relief, but the relief the Nursing Homes sought was retrospective in nature. Separately, the district court found that the Nursing Homes' claims for prospective relief were, at best, moot because the Residents were either receiving Medicaid benefits or deceased so no prospective relief could be given. Second, the court held that the Nursing Homes failed to state a plausible due process claim because the Residents had an opportunity to challenge the Secretaries' actions through the state administrative and judicial processes. Based on these holdings, the district court dismissed the case by order of August 7, 2017, but without specifically addressing the ADA or Rehabilitation Act claims. The Nursing Homes timely appealed the court's order.

The Nursing Homes also moved to alter or amend the district court's dismissal order under Rule 59(e) of the Federal Rules of Civil Procedure, contending that the court had overlooked their ADA and Rehabilitation Act claims which were not foreclosed by the Eleventh Amendment. In considering that motion, the district court recognized the ADA and Rehabilitation Act claims were not covered by Eleventh Amendment immunity

5

and that it was required to address them. The district court did so and denied the Nursing Homes' motion on two separate grounds. First, the district court held that the Nursing Homes had no standing to raise claims under the ADA or the Rehabilitation Act on behalf of the Residents because the Nursing Homes were not the real party in interest and "[o]n this basis, [] dismissal [would] be warranted." J.A. 83 n.3. Next, the district court held that the Complaint did not "contain sufficient factual allegations to survive a motion to dismiss under Rule 12(b)(6) [of the Federal Rules of Civil Procedure]." J.A. 81. The court explained that the Nursing Homes did not allege sufficient facts to show the required elements of ADA or Rehabilitation Act claims that the Residents were disabled or were discriminated against because of their disabilities.

The Nursing Homes timely appealed the district court's order denying their Rule 59(e) motion, and the two appeals were consolidated. This Court has jurisdiction over the consolidated appeal under 28 U.S.C. § 1291.

II.

A.

The district court dismissed the Nursing Homes' Fourteenth Amendment and Medicaid Act claims for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure because the relief the Nursing Homes sought was barred by the Eleventh Amendment, and the claims not barred by the Eleventh Amendment were moot. We review de novo a district court's application of the Eleventh Amendment and

6

dismissal based on mootness. *See Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017); *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001).

B.

The Eleventh Amendment prohibits "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It "precludes citizens from bringing suits in federal court against their own states." *Litman v. George Mason Univ.*, 186 F.3d 544, 549 (4th Cir. 1999). This immunity bars "actions such as that here against state officials that are in fact actions against the state as the real party in interest." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998).

Notwithstanding this broad coverage, the Supreme Court carved out a limited exception to Eleventh Amendment immunity in *Ex Parte Young*, 209 U.S. 123 (1908).[2] The *Ex Parte Young* exception to the Eleventh Amendment "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute."

---

[2] There are three exceptions to Eleventh Amendment immunity. *See Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 248–49 (4th Cir. 2012). "First, 'Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.'" *Id.* at 249 (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001)). Second, the *Ex Parte Young* exception applies to a suit against a state official acting in violation of federal law. *Id.* Third, a state may waive its Eleventh Amendment immunity. *Id.* Here, the parties do not claim that the Secretaries' Eleventh Amendment immunity against the Nursing Homes' Fourteenth Amendment and Medicaid Act claims was abrogated by Congress or waived by the Secretaries. Thus, the only challenge to the Secretaries' Eleventh Amendment immunity defense is whether the *Ex Parte Young* exception applies to the Nursing Homes' claims.

7

*Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). Under this exception, a state official who acts in violation of federal law is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex Parte Young*, 209 U.S. at 160.

By subjecting a state official to a legal action, the *Ex Parte Young* exception seeks to "conform [his] future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Thus, this Court has held that this exception "does not apply when the alleged violation of federal law occurred entirely in the past," *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999), but applies when "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective," *Allen*, 134 F.3d at 627.

Here, the Nursing Homes' Complaint requests three kinds of relief: (1) compensatory damages,[3] (2) declaratory relief, and (3) injunctive relief, including the Secretaries' "automatic approval (and payment) of the [Residents'] Medicaid benefits retroactive to their initial dates of eligibility." J.A. 24 ¶ 73. The district court held that because the relief sought by the Nursing Homes "is not prospective in nature, they are unable to avail themselves of the [*Ex Parte*] *Young* exception, and the Secretar[ies] are

---

[3] On appeal, the Nursing Homes do not challenge the district court's dismissal of their request for damages with respect to their Fourteenth Amendment claim and admit, "the proper remedy [was] for the District Court to grant a motion to dismiss [their] claim for compensatory damages with respect to their claims for due process violations." Opening Br. 33–34.

entitled to state sovereign immunity under the Eleventh Amendment." J.A. 71–72. We agree with the district court that certain relief sought by the Nursing Homes is not prospective in nature and thus Eleventh Amendment immunity bars this claim.

Relief that is retrospective in nature, such as "the payment of . . . money which that court held should have been paid, but was not," does not fall under the *Ex Parte Young* exception. *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). The Eleventh Amendment prohibits a claimant from seeking retrospective relief that "requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation" for the past wrong. *Id.* at 668. This relief "is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the . . . state officials." *Id*.

Accordingly, when, in a previous case, Maryland reduced Medicaid recipients' benefits without the statutorily required notice, we held that the Eleventh Amendment prevented a Medicaid recipient from collecting reimbursement for services rendered after Maryland had improperly terminated his Medicaid benefits and before the district court held that the state's procedures violated the Medicaid Act. *Kimble v. Solomon,* 599 F.2d 599 (4th Cir. 1979). We explained that, "[t]o require the state to make payments for these past medical services would be tantamount to the award of an [a]ccrued monetary liability which represents retroactive payments." *Id.* at 604–05 (alterations and internal quotation marks omitted).

Here, the Nursing Homes requested the same type of relief as did the plaintiffs in *Kimble*: an award of Medicaid benefits or payments for past medical services dating back

9

to the Residents' dates of eligibility. This relief is "designed to remedy [the Secretaries' alleged] past violations of federal law." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring in part). As we held in *Kimble*, this type of relief is retrospective in nature and is clearly foreclosed under the Eleventh Amendment. *See* 599 F.2d at 604–05.

The Nursing Homes fail to distinguish the relief sought in *Kimble* from the relief they seek here. They cite to an inapposite case, *Smith v. Miller*, in which the district court had ordered that all future Medicaid requests not timely processed, as required by Illinois law, would be deemed approved. 665 F.2d 172, 173–74 (7th Cir. 1981). In contrast, the Nursing Homes here demanded that the Secretaries approve *previously denied* Medicaid applications and pay claims retroactive to the Residents' eligibility date. The Nursing Homes' citation to *Doctors Nursing and Rehabilitation Center, LLC v. Norwood*, No. 1:16-cv-9837, 2017 WL 3838031 (N.D. Ill. Sept. 1, 2017), is similarly unpersuasive. There, the plaintiffs identified the defendant's "ongoing violations of the Medicaid Act" and requested enjoining the defendant's future conduct to comply with the Medicaid Act. *Id.* at \*8. The district court awarded the requested relief because it was "sufficiently forward-looking" to fall within the *Ex Parte Young* exception. *Id.* The court did so after clearly recognizing, as we did in *Kimble*, that "the Eleventh Amendment does not permit a damages award against the state for [] past due payments" or allow the plaintiffs "to be reimbursed for past home or community-based services." *Id.* (internal quotation marks omitted). Thus, *Doctors Nursing and Rehabilitation Center,*

10

*LLC* stands for the same proposition as that in *Kimble* and prohibits an award of retrospective relief sought by the Nursing Homes.

In short, the Eleventh Amendment bars the Nursing Homes' constitutional and Medicaid Act claims for damages or other relief based on past actions.

C.

Although the Nursing Homes' claims for retrospective relief fail, they contend their claims for injunctive and declaratory relief—declaring that the Secretaries' administration of the Medicaid program violates federal law, requiring them to approve the Residents' Medicaid applications based on their current status, and mandating the Secretaries to pay future Medicaid benefits—remain because the Nursing Homes request prospective relief. These claims could survive an Eleventh Amendment challenge and fall within the *Ex Parte Young* exception only if the relief sought is prospective in nature. *See Allen*, 134 F.3d at 627.

The Supreme Court has explained that injunctive relief requiring a state official "to conform his *future* conduct of that office to the requirement of the Fourteenth Amendment" is prospective in nature. *Edelman*, 415 U.S. at 664 (emphasis added). Accordingly, this Court has held an injunction "mandating that in the future, State officials bring the [State's] Medicaid program into compliance with the Medicaid Act" is prospective in nature. *Antrican*, 290 F.3d at 186. But it is unnecessary for us to decide if the declaratory and injunctive relief sought by the Nursing Homes is prospective relief falling within the *Ex Parte Young* exception. Even if we assume, without deciding, that

11

the requested relief is sufficiently prospective in nature, we lack subject matter jurisdiction to consider the Nursing Homes' claims.

We agree with the district court that the Nursing Homes' claims for declaratory and injunctive relief are, "at best, moot" given the status of the Residents. J.A. 71. "The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction." *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). When a case is moot, "the court's subject matter jurisdiction ceases to exist." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015).

Here, the Residents on whose behalf the Nursing Homes are suing the Secretaries "lack a legally cognizable interest in the outcome." *Powell*, 395 U.S. at 496. Neither the Deceased nor the Living Residents could enjoy prospective injunctive or declaratory relief. As to the Deceased Residents, "it is axiomatic" that "a deceased litigant" cannot enjoy prospective injunctive relief. *Brown v. Town of Cary*, 706 F.3d 294, 299 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). Maryland law also prohibits a deceased Medicaid recipient from collecting Medicaid benefits. *See* Md. Code Regs. 10.09.24.11(C)(7), (D)(5) (noting that the state may not certify "a deceased person" as in need of medical assistance, such as Medicaid, "beyond the date of death"). The Living Residents fare no better. The Nursing Homes concede the Living Residents are all now receiving Medicaid benefits. Thus, the Living Residents "lack a legally cognizable interest in" both a prospective award of Medicaid

12

benefits they are already receiving and the Secretaries' corrected administration of the Medicaid program, which would have no effect on them. *Powell*, 395 U.S. at 496. Thus, we agree with the district court that the Nursing Homes' claims for declaratory and injunctive relief are moot and require dismissal because we lack subject matter jurisdiction.[4]

## III.

### A.

The district court dismissed the Nursing Homes' ADA and Rehabilitation Act claims when it denied their Rule 59 motion on two separate grounds. First, the district court concluded that the Nursing Homes lacked standing to bring either claim on behalf of the Residents because the Nursing Homes were not the real party in interest. Second, the court held that the Nursing Homes failed to state plausible ADA and Rehabilitation Act claims under Rule 12(b)(6). On appeal, the Nursing Homes do not challenge the district court's dismissal based on their lack of standing, thus waiving our review of the standing issue. *See Tucker v. Waddell*, 83 F.3d 688, 690 n.1. (4th Cir. 1996) (deeming an issue not raised on appeal "to have been abandoned" because the appellant "did not address it in any way in her appellate briefs or at oral argument"). Because the Nursing Homes do not challenge the district court's standing holding, we affirm the district court's dismissal of the ADA and Rehabilitation Act claims.

---

[4] Accordingly, there is no need to address the district court's determination on the merits that the Nursing Homes did not state a plausible due process claim.

B.

Nonetheless, even if we assume the Nursing Homes had standing, the district court correctly dismissed their ADA and Rehabilitation Act claims under Rule 12(b)(6). As the issue was addressed by the district court under Rule 59(e), we review its determination for an abuse of discretion. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010). Because "[a] district court abuses its discretion when it misapprehends or misapplies the applicable law," *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014), we must examine whether the district court correctly applied the Rule 12(b)(6) standard to the ADA and Rehabilitation Act claims.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Facial plausibility is established once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (internal quotation marks omitted). "[M]ere conclusory statements" are not enough to demonstrate facial plausibility. *Id.* at 258. "Such conclusory statements are insufficient as a matter of law to demonstrate [a plaintiff's] entitlement to relief," warranting dismissal of the complaint. *Id.* at 260.

C.

Title II of the ADA and Section 504 of the Rehabilitation Act prohibit discrimination against an individual because of his or her disability. 29 U.S.C. § 794(a)

14

(prohibiting discrimination on the basis of disability against an "otherwise qualified individual with a disability" in the administration of federal programs); 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

"Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." *Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333, 336 n.1. (4th Cir. 2012) (internal quotation marks omitted). To establish a violation of either statute, plaintiffs must prove "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016).

The ADA's Title II and the Rehabilitation Act "differ only with respect to the third element, causation." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). "To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." *Id.* at 461–62 (quoting *Baird ex rel. Baird v. Rose*, 192 F.3d 46, 468–69 (4th Cir. 1999)). Because the Rehabilitation Act imposes "a stricter causation requirement than the ADA," we will analyze whether the Nursing Homes have alleged sufficient facts to state a plausible ADA claim. *Thomas v.*

15

*Salvation Army S. Territory*, 841 F.3d 632, 641 (4th Cir. 2016). If that claim fails, the Rehabilitation Act claim must fail as well.

D.

We hold that the district court correctly dismissed the Nursing Homes' ADA claim. Although plaintiffs need not prove their prima facie case at the pleading stage, *see Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002), they must "allege facts sufficient to state all the elements of [their] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Here, the Complaint does not allege sufficient facts to support an ADA claim and therefore fails to meet the Rule 12(b)(6) standard.

The Nursing Homes failed to allege that the Residents are disabled within the meaning of the ADA, which defines disability as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1) (defining "disability"). A plaintiff is disabled if he can show "(1) that he has a physical or mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006).

The Complaint, however, pleads only the vague generality that the Residents are "qualified individuals with a disability." J.A. 15 ¶ 23. This conclusory phrase is the sum total of the Complaint's allegations addressing the elements of an ADA claim. The remainder of the Complaint fails to provide any additional allegations as to how or why the Residents are disabled or meet the statutory requirements for disability. For example,

16

the Nursing Homes expressly disavow any argument that the Residents are disabled because they are in nursing facilities: "[We] *are not arguing or suggesting* that there is *any presumption* that individuals who receive long-term care nursing facility services are disabled under the definition of the ADA[.]" Opening Br. 22 (emphases added). The Complaint thus fails, on its face, to plead the necessary and basic elements of an ADA claim.

Further, the Nursing Homes also failed to plead that any Resident's alleged disability motivated the Secretaries to deny Medicaid benefits. In fact, the Living Residents are currently receiving Medicaid benefits. As to the Deceased Residents, the Complaint makes clear that they were denied Medicaid benefits not because of animus motivated by their alleged disability, but because of the Secretaries' alleged deficient administration.

Because the Nursing Homes failed to state a viable ADA claim, they failed to state a cognizable Rehabilitation Act claim. *See Thomas*, 841 F.3d at 641. The district court's decision to dismiss the ADA and Rehabilitation Act claims is therefore affirmed.

IV.

For the foregoing reasons, the district court's judgments dismissing the Nursing Homes' Complaint and denying the motion to alter or amend judgment are

*AFFIRMED.*

17