**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-1249**

───────────────

BIEJAN ARVON,

Plaintiff − Appellant,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Defendant and 3rd-Party Plaintiff - Appellee,

v.

MARC SELDIN ROSEN, Esq.; LAW OFFICES OF MARC SELDIN ROSEN,

Third Party Defendants.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Beth P. Gesner, Magistrate Judge. (1:17−cv−02022−BPG)

───────────────

Argued: May 6, 2021                                  Decided: August 4, 2021

───────────────

Before MOTZ, DIAZ, and RICHARDSON, Circuit Judges.

───────────────

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Motz and Judge Richardson joined.

───────────────

Jeffrey M. Kotz, KOTZ LAW GROUP, Towson, Maryland, for Appellant. James Charles Mehigan, MEHIGAN LAW GROUP PLLC, Reston, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

In the decade since a car crash injured Biejan Arvon, he's yet to find the right way to hold someone accountable for his injuries. He's sued the wrong person, waited too long to sue the right people, and failed to persuade Liberty Mutual Fire Insurance Company to accept a settlement offer on behalf of its insureds. Even though Liberty Mutual paid for the damage to his car and at least some of his medical bills, Arvon has now sued the insurance company for purportedly sabotaging his previous legal efforts. But, once again, he hasn't succeeded.

I.

In July 2011, Biejan Arvon's car was rear-ended by another car driven by Alireza Gol. The other car's owner, Hamed Khodaparasti, was in the passenger's seat when the crash occurred because he was feeling ill and asked Gol to drive. Khodaparasti had recently immigrated to the United States and didn't speak enough English to obtain auto insurance on his own, so he had insured his car by enlisting his roommate, Puya Shakiba, to obtain a policy with Liberty Mutual Fire Insurance Company. The policy listed Shakiba and Khodaparasti as co-policyholders.

Because Arvon was transported to a nearby hospital for treatment after the accident, he was unable to exchange contact and insurance information with Gol and Khodaparasti. But the police officer who was dispatched to the scene prepared a publicly available accident report that described the accident, named all three men, and listed the relevant insurance information.

3

Someone—likely either Khodaparasti or Gol, but it's unclear who—called Liberty Mutual to report the crash two days later. A Liberty Mutual representative then contacted Arvon's wife, who told the representative that Arvon was in the hospital being treated for his injuries.

Around the same time, another Liberty Mutual representative investigated the crash and determined that Gol was both 100% at fault and covered under Khodaparasti's policy as a permissive driver. As a result, Liberty Mutual paid for the property damage to Arvon's car and at least some of Arvon's medical expenses. Arvon also testified that, around this time, someone from Liberty Mutual informed him over the phone that Shakiba was the person "responsible" for the collision. J.A. 507.

Liberty Mutual then sent Arvon several letters in the course of its claims handling process. The letters all identified Shakiba as the "Insured," and none of them mentioned Gol or Khodaparasti. J.A. 178–97. In the meantime, Arvon retained counsel. Arvon's counsel and Liberty Mutual tried for some time to negotiate a possible settlement, but they were unsuccessful. Arvon eventually sued Shakiba in Maryland state court on June 23, 2014, about two weeks before Maryland's three-year limitations period for negligence actions was set to expire.

Shortly after filing suit, Arvon's counsel notified Liberty Mutual that counsel intended to serve Shakiba, and Liberty Mutual responded only to say that it hadn't yet reviewed Arvon's latest settlement demand package. *See Arvon v. Shakiba*, 2017 WL 1592555, at *2 (Md. Ct. Spec. App. May 1, 2017). The limitations period expired without the two sides reaching an agreement. About three weeks later, Liberty Mutual responded

4

to another settlement-related email from Arvon's lawyer and made clear for the first time that Gol and Khodaparasti—not Shakiba—were in the car that rear-ended Arvon. *Id.*

Arvon then amended his complaint to add Khodaparasti and Gol as defendants. But the state trial court eventually granted summary judgment in favor of Khodaparasti, Gol, and Shakiba. It ruled that Shakiba couldn't be liable because he wasn't driving the car, and Gol and Khodaparasti couldn't be liable because Arvon sued them after the limitations period expired. *Id.* at *1.

Arvon appealed that ruling, and the Maryland Court of Special Appeals affirmed. *Id.* In doing so, however, the court opined that Arvon's "claims regarding misrepresentations and bad faith may be more properly aimed at Liberty Mutual in another forum." *Id.* at *4. Taking that suggestion to heart, Arvon filed this action against Liberty Mutual for fraudulently and negligently misrepresenting that Shakiba was the car's driver until the limitations period for suing Gol and Khodaparasti had expired. After Liberty Mutual removed the case to federal court, the district court granted summary judgment in Liberty Mutual's favor.[1]

Arvon timely filed a Motion to Alter or Amend Judgment—essentially a Federal Rule of Civil Procedure 59(e) motion for reconsideration of the court's summary judgment ruling. He argued that evidence in the summary judgment record showed that someone

---

[1] Both a district judge and a magistrate judge entered orders affecting the case. Since it isn't necessary for purposes of this appeal to distinguish between the two judges, we refer to both as the "district court."

5

from Liberty Mutual (Arvon couldn't remember who) told Arvon during a phone call that Shakiba was the at-fault driver.

The district court denied the motion. It suggested that, as a procedural matter, Arvon's motion failed because the evidence supporting his argument was available to him during summary judgment briefing. The court also ruled on the merits of Arvon's request that the evidence itself was insufficient to create a genuine dispute of material fact about whether Liberty Mutual fraudulently or negligently misrepresented any material information to him.

This appeal followed.

## II.

Although Arvon collapses his appeal into a single challenge to the district court's judgment against him, there are two separate issues for us to consider: (1) whether the district court properly granted summary judgment in Liberty Mutual's favor; and (2) whether the district court correctly denied Arvon's motion for reconsideration. We begin with the latter question, as its answer informs the former.

## A.

In his Rule 59(e) motion, Arvon argued that the district court erroneously concluded that no genuine dispute of fact existed about whether Liberty Mutual ever told him that Shakiba was the at-fault driver. Even though Arvon never cited to or discussed it in his summary judgment briefing, a passage from his deposition—which was in the summary judgment record—suggests that Arvon recalled "a conversation with a woman at Liberty

6

[Mutual] whose name [he does] not know" who "told [him] that Puya Shakiba was responsible for [his] accident." J.A. 508.

According to Arvon, this testimony contradicted Liberty Mutual's position that it never represented that Shakiba was at fault for the car crash. He contended, based on that purported evidentiary conflict, that the court should have changed its summary judgment ruling and permitted the case to proceed to trial. Arvon makes the same argument on appeal, and we reject it.

District courts may grant a Rule 59(e) motion for three reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at [the time of judgment]; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (cleaned up). We may not overturn a district court's decision on a Rule 59(e) motion unless the court abused its discretion. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018).

Here, the district court acted well within its discretion to deny Arvon's motion. For starters, Arvon's argument relies on no change in law. Since the deposition testimony that Arvon cites was in the summary judgment record before the district court, it was certainly available to him at the time of judgment. Accordingly, Arvon can succeed only if the

7

district court's ruling was legal error or created a "manifest injustice."[2]  J.A. 543.  For two independent reasons, it didn't.

First, the court committed no error by failing to consider Arvon's testimony about the phone call because Arvon never cited to it during summary judgment proceedings. Federal Rule of Civil Procedure 56 states that "[t]he court need consider only the cited materials" in a summary judgment brief, even though it "may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Rule 56(c)(3) was added to the Federal Rules of Civil Procedure in 2010 to clarify that a "court may decide a motion for summary judgment without undertaking an independent search of the record."  *Id.* at Committee Notes on Rules—2010 Amendment; *see also Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017) (The Rule now "require[s] parties to cite all evidence in support of their positions at summary judgment, thus permitting a district court to limit its review to such cited materials").

Here, Arvon could have cited to his own deposition testimony during summary judgment briefing, but he didn't.  His failure to timely highlight his own testimony to the district court dooms any claim that the court's ruling was legal error or created a manifest

---

[2] While federal courts have yet to provide a concrete definition of "manifest injustice," they have set out guidelines that aid us here.  In *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 408–09 (4th Cir. 2010), we cited with approval *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004), which affirmed a district court's denial of a Rule 59(e) motion when "the dismissal of the [] suit might have been avoided through the exercise of due diligence."  And the D.C. Circuit held in another case that "[m]anifest injustice does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered."  *Ciralsky v. C.I.A.*, 355 F.3d 661, 673 (D.C. Cir. 2004) (cleaned up).

injustice—particularly when the rules governing summary judgment permitted the court to ignore uncited evidence.

Second, we agree with the district court that the phone call doesn't create a genuine dispute of material fact. Even if we accept Arvon's testimony that someone from Liberty Mutual told him that Shakiba was "the one who is responsible for [his] accident," J.A. 507, that statement is not at odds with Liberty Mutual's determination that Shakiba was "responsible" because he held the insurance policy under which Liberty Mutual reimbursed Arvon for his property damage and personal injuries. As the district court explained, that's a different issue than the primary one in this case: whether Liberty Mutual represented that Shakiba was the "at-fault driver" in the collision that injured Arvon. J.A. 543. Since the unnamed Liberty Mutual agent never suggested that Shakiba was in the car that rear-ended Arvon's car, the phone call evidence doesn't create a genuine dispute of *material* fact. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) ("[M]aterial fact[s]" are those "that might affect the outcome of the suit under the governing law.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The district court's ruling was therefore correct and caused no manifest injustice by failing to consider Arvon's additional evidence.

We affirm the district court's denial of Arvon's Rule 59(e) motion.

B.

We turn now to the district court's summary judgment ruling. The court ruled in Liberty Mutual's favor on Arvon's fraudulent and negligent misrepresentation claims because "no reasonable jury could find that: (1) [Liberty Mutual] made a false statement

9

to [Arvon]; (2) [Liberty Mutual] owed a duty to [Arvon] to disclose all material facts; and (3) [Liberty Mutual] intended to defraud [Arvon] or intended that its statements would be acted upon by [Arvon]." *Id.* at *4. We have carefully reviewed the record that the district court examined and now affirm largely on the district court's reasoning. *See Arvon v. Liberty Mut. Fire Ins. Co.*, No. CV BPG-17-2022, 2019 WL 4243035 (D. Md. Sept. 6, 2019).

1.

First, the district court was correct that Liberty Mutual made no false statement to Arvon. A claim under Maryland law for fraudulent misrepresentation based on an affirmative false statement generally requires the plaintiff to show:

> (1) that defendant made a misrepresentation of a material fact which was false; (2) that its falsity was known to him; (3) that defendant made the misrepresentation for the purpose of defrauding plaintiff; (4) that plaintiff not only relied upon the misrepresentation but had the right to do so and would not have done the thing from which the damage resulted if it had not been made; and (5) that plaintiff suffered damage from defendant's misrepresentation.

*Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 888 (Md. Ct. Spec. App. 1984).

At summary judgment, Arvon relied on two categories of communications he had with Liberty Mutual. The first category includes the letters from Liberty Mutual to Arvon indicating that Shakiba was the "Insured." J.A. 467. The second includes correspondence between Arvon's attorney and Liberty Mutual that reflect an understanding by the attorney that Shakiba was the at-fault driver. These include letters that refer to Shakiba as the "Insured" for purposes of settlement discussions; a message from counsel to Liberty Mutual stating, "your insured, Puya Shakiba, rear ended" Arvon; an email from counsel to

Liberty Mutual attaching Arvon's state-court complaint against Shakiba; and an email from counsel to Liberty Mutual with the subject line, "RE: Biejan Arvon v. Puya Shakiba." J.A. 467–68.

But the only statements *from* Liberty Mutual are those that described Shakiba as an "insured." And that description was literally true, since Shakiba and Khodaparasti were co-holders of the policy under which Liberty Mutual accepted coverage obligations. No evidence in the record cited to the district court suggests that Liberty Mutual ever affirmatively described Shakiba as the at-fault driver. Since Arvon hasn't shown that Liberty Mutual affirmatively misrepresented any material fact, he can't recover under that theory of fraudulent misrepresentation. *Finch*, 469 A.2d at 888.

Our analysis would end there, except that "Maryland law [also] recognizes the possibility that statements that are not literally false may nevertheless be fraudulent." *State Constr. Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449, 469 (D. Md. 2019) (citing *Lubore v. RPM Assocs., Inc.*, 674 A.2d 547, 556 (Md. Ct. Spec. App. 1996). In such cases, when plaintiffs assert a theory of fraudulent misrepresentation through concealment or nondisclosure, fraud can occur when, "in addition to a party's silence, there is any statement, word, or act on his part, which tends affirmatively to the suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or distraction of a party's attention from the real facts." *Lubore*, 674 A.2d at 556 (cleaned up). Then, instead of the first two fraudulent misrepresentation elements described above, plaintiffs must show that "(1) Defendant owed a duty to plaintiff to disclose a material fact; [and] (2) Defendant

11

failed to disclose that fact." *Id.* at 555. The other three elements—intent to defraud, justifiable reliance, and causation—are the same. *See id.*

Similarly, a claim for negligent misrepresentation in Maryland requires a plaintiff to demonstrate that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982).

Although the district court didn't squarely address concealment or negligent nondisclosure with respect to these alternative theories of liability,[3] we conclude that Arvon's claims nonetheless fail because the important information that Liberty Mutual may have concealed or negligently withheld was immaterial under Maryland law.

Maryland courts have held that, under either a fraudulent or negligent misrepresentation theory, the misrepresented, concealed, or negligently withheld information must be "material" to the dispute. *Gross v. Sussex Inc.*, 630 A.2d 1156, 1162 (Md. 1993). And that materiality requirement operates in the same way with respect to both torts. *See id.* (describing the materiality requirement as a "common element[]" of fraudulent and negligent misrepresentation claims). Relevant here, a "misrepresentation is

---

[3] Instead, it moved on to whether Liberty Mutual owed Arvon a duty of disclosure, an issue that we discuss further below. *See Arvon*, 2019 WL 4243035, at *5–*7.

12

generally immaterial if the party to whom it is made reasonably could have ascertained the true facts." *Sass v. Andrew*, 832 A.2d 247, 266 (Md. Ct. Spec. App. 2003) (citing *Carozza v. Peacock Land Corp.*, 188 A.2d 917, 921 (Md. 1963)).

We conclude that Arvon could have ascertained this case's key fact—that Shakiba wasn't the at-fault driver—with minimal and reasonable effort. It's undisputed that:

> an accident report was completed by a police officer on the day of the accident. This report was public and available to [Arvon] for review at any time. The report lists Gol as the driver of the vehicle and [Khodaparasti] as the owner of the vehicle. Shakiba's name does not appear anywhere on the police report.

*Arvon*, 2017 WL 1592555, at *4. As the Maryland Court of Special Appeals noted, Arvon "had this report available to him for three years before" suing Shakiba, but "[Arvon] and counsel apparently never looked at the police report." *Id.* Even a cursory "review of the report at any point during the three-year period would have alerted [Arvon] as to the correct party to sue." *Id.*

Arvon argues that the law shouldn't have required him to consult the police report before filing suit, but he misses the mark. He relies mainly on *Gross*'s discussion of the following passage from a tort treatise:

> It is now held that assertions of fact as to quantity or quality of land or goods sold, the financial status of corporations, and similar matters inducing commercial transactions, may justifiably be relied on without investigation, not only where such investigation would be burdensome or difficult, as where land which is sold lies at a distance, but likewise where the falsity of the representations might be discovered with little effort by means easily at hand. *The plaintiff is not required, for example, to examine public records to ascertain the true state of the title claimed by the defendant.* It is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance or he has discovered

13

something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.

630 A.2d at 1167 (emphasis added) (quoting W. Page Keeton et al., *Prosser and Keeton, on the Law of Torts* § 108 at 752 (5th Ed. 1984)).

While the italicized language above suggests that, in certain circumstances, Maryland law absolves plaintiffs of the obligation to dig through public records before filing suit, the treatise on which *Gross* relies limits itself to assertions regarding the "quantity or quality of land or goods sold, the financial status of corporations, and similar matters inducing commercial transactions." 630 A.2d at 1167. And *Gross* itself was a case about a real property sale. *See generally id.* Arvon's suit against Shakiba, on the other hand, involved no real property transaction, sale of goods, corporate finances, or commercial transactions—it was a personal injury dispute.

Moreover, even if we could interpret *Gross*'s reasoning to apply outside the specific contexts that the treatise highlighted, the case also limits itself to false "assertions of fact," not purported misrepresentations via silence or nondisclosure (like we have here). That limitation is consistent with other Maryland courts' decisions in cases involving affirmative false statements. *See, e.g.*, *Rozen v. Greenberg*, 886 A.2d 924, 931 (Md. Spec. Ct. App. 2005) (holding that affirmative misrepresentations about the defendant's business capabilities and qualifications were material and induced justifiable reliance, even though plaintiff could have investigated to find out the truth). In the context of misrepresentation through concealment, however, the plaintiff must prove that he "could not have discovered

14

the cause of action *despite the exercise of reasonable diligence*." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 976 n.14 (Md. 2000) (emphasis added).

The bottom line is that, with some minimal effort and diligence, Arvon could have consulted the police report at any point during the three-year limitations period and learned that Gol (with Khodaparasti as his passenger)—not Shakiba—rear-ended Arvon. 2017 WL 1592555 at *4 (opining that Arvon's "argument is undercut by the fact that the necessary information to correctly file suit was available at [his] disposal for the entirety of the period prior to the expiration of the statute of limitations."). Since the at-fault driver's identity was therefore immaterial for the purposes of misrepresentation claims, *Sass*, 832 A.2d at 266, Arvon's claims based on concealment or negligent misrepresentation must fail.

2.

We also agree with the district court that (1) Liberty Mutual owed no duty of disclosure to Arvon and that (2) Arvon failed to show that Liberty Mutual intended to deceive him.

First, a plaintiff attempting to show that a defendant owed a duty of care in a tortious misrepresentation case must demonstrate an "intimate nexus" between the parties through "contractual privity or its equivalent." *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 554 (Md. 2000). In other words, the relationship between the parties "must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care." *Id.* Such an intimate nexus exists, for example:

15

between parties who have engaged in detailed, months-long business negotiations, or contemplated a long-term relationship. Courts have also considered whether the party making the alleged misrepresentation had exclusive control over material information necessary for the other party to understand the situation, and whether the defendant's promises were an inducement to the plaintiff and provided the defendant with a business advantage when the plaintiff acted in conformance with them.

*Dierker v. Eagle Nat'l Bank*, 888 F. Supp. 2d 645, 655–56 (D. Md. 2012) (cleaned up) (citing decisions from Maryland courts and the Fourth Circuit interpreting Maryland law).

We see no reason to conclude that any nexus between Liberty Mutual and Arvon was close or intimate enough to create a tort duty in this case. The parties had no long-term relationship and engaged in no detailed or drawn-out business negotiations. Nor did Liberty Mutual have exclusive control over the material information in this case—rather, Arvon could have obtained it through the police report from day one. Thus, Liberty Mutual owed Arvon no duty to disclose.

Second, Arvon's claims require him to show that Liberty Mutual intended to deceive him. *Martens Chevrolet*, 439 A.2d at 539; *Lubore*, 674 A.2d at 555. Arvon argues that Liberty Mutual deceived him by knowing the identity of the real at-fault driver and choosing not to disclose it. The only explanation for that choice, Arvon contends, is that Liberty Mutual intended to hide the truth in order to run out the three-year limitations clock and avoid its coverage obligations.

To the contrary, the record shows that Liberty Mutual promptly determined that its insured was at fault and then paid for Arvon's property damage and some of his medical expenses. It also shows that the letters from Liberty Mutual to Arvon listed Shakiba as the "Insured" not because of some nefarious intent to hide Gol or Khodaparasti's identity, but

16

because Liberty Mutual's computerized correspondence system automatically populates letters' subject lines with the name of one of the policyholders of the relevant policy. In this case, that name happened to be Shakiba's, rather than Khodaparasti's, and the claims agent who sent the letters had no ability to change the subject line. Liberty Mutual's automated system may not be the wisest or most direct method of communicating with claimants, but it doesn't reflect an intent to mislead or deceive.

Without any evidence demonstrating such intent, this line of argument is no more than the speculative "building of one inference upon another," which isn't enough to create a genuine dispute of material fact. *Cox v. Cnty. of Prince William*, 249 F.3d 295, 300 (4th Cir. 2001) (cleaned up). Since Arvon has advanced no concrete evidence of Liberty Mutual's intent to deceive him, we agree with the district court that his claims must fail.

In sum, Arvon has demonstrated no genuine disputes of material fact as to whether Liberty Mutual made a material misrepresentation, whether Liberty Mutual owed him any duty of care, or whether Liberty Mutual intended to deceive him.

III.

For these reasons, the district court's judgment is

*AFFIRMED*.

17